Smith v. Gaines.

Andrew J. Smith et al.

v.

Marquis D. L. Gaines et al.

1. Partition of lands may be made between remaindermen, subject to the life estate.

2. Where partition is prayed by trustees holding title, it is not necessary to make the *cestuis que trust* parties.

3. Complainant's title was derived under the will of a northern man who lived and died in the south during the war of the rebellion. He was loyal and took the oath of allegiance. The devisee under whom the complainants claim was the wife of an officer of the confederate navy. She, too, took the oath of allegiance and there is no proof that she was not loyal.—*Held*, that there was no ground for staying the proceedings because of the alleged invalidity of the complainant's title on the score of its having been derived from alien enemies.

Bill for partition of land. On final hearing on pleadings and proofs.

*Mr. H. C. Pitney*, for complainants.

Note.—An alien, in time of peace, may take by devise, *1 Jarm. on Wills* *67 and notes; Smith v. Zaner, 4 Ala. 99;* or, by bequest, *Craig* v. *Leslie, 3 Wheat. 563; Anstice v. Brown, 6 Paige 448; Frierson* v. *General Assembly, 7 Heisk. 683;* or, under the statute of distributions, *Greenia* v. *Greenia, 14 Mo. 526; Greenheld* v. *Morrison, 21 Iowa 538; Polk* v. *Ralston, 2 Humph. 537.*

An alien enemy may take by devise, except as against the state, *Stephens* v. *Swann, 9 Leigh 404; Hoskins* v. *Hughes, 2 Duv. 285; Crutcher* v. *Hord, 4 Bush 367;* or by bequest, *Atty.-Gen.* v. *Weeden, Parker 267; Bradwell* v. *Weeks, 1 Johns. Ch. 206,* reversed, *13 Johns. 1;* see *Hevin* v. *Bridault, 37 Miss. 209; Marx* v. *McGlynn, 88 N. Y. 357.*

A deed executed in time of war within the United States lines to citizens of the United States, by the attorney of the grantor, while the grantor is within the confederate lines and an alien enemy, is void, *Filor* v. *United States, 3 Ct. of Claims 25;* and so of a deed executed in New York, by a loyal citizen thereof, conveying lands in Savannah to a citizen thereof, *Dillon* v. *United States 5 Ct. of Claims 586;* and so of lands lying in Iowa, by a citizen of Virginia to a citizen of Ohio, *Hill* v. *Baker, 32 Iowa 302;* and so of a mortgage, *Mims* v. *Armstrong, 42 Miss. 429; Hyatt* v. *James, 2 Bush 463.*

Smith v. Gaines.

*Mr. B. Williamson,* for defendants.

THE CHANCELLOR.

This suit is brought by Andrew J. Smith, Melvin S. Condit and Edmund D. Halsey to obtain a partition of a tract of land of about two hundred and fifty acres in Morris county, known as the Copperas Mine Tract. The bill states that they are the owners by devise in the will of Andrew B. Cobb, deceased, of a life estate in the whole property for the life of Mrs. Sarah Jane Bell, and that they are the owners by deed of conveyance from Mrs. Elizabeth McK. Roberts of the undivided half of the remainder in fee. She obtained her title by devise from Edward Ennis Graham. The defendants are the owners of the other half of the remainder in fee. They object to a decree for partition on several grounds. One is that the complainants have no valid title under the deed from Mrs. Roberts, because they insist, when Edward Ennis Graham died (March 11th, 1864), both he and she were alien enemies. They both then resided in North Carolina, and that state was then in rebellion. The proof shows that Mr. Graham resided in the south from necessity, because his health was such (he was afflicted with pulmonary consumption, of which he died) that he could not live in the north. He was a native of New York, and went from that state to North Carolina, and lived there for the sake of his health. The proof also

A deed of lands in Memphis, executed in Atlanta, while that city was within the federal lines, was upheld in *Shaw* v. *Carlisle, 9 Heisk. 594.*

As to deeds executed during the rebellion between citizens of different states in rebellion, see *Galbraith* v. *McFarland, 3 Coldw. 267;* *Brown* v. *Gardner, 4 Lea 145;* *Lance* v. *Hunter, 72 N. C. 178;* *Conrad* v. *Wapples, 96 U. S. 279.*

A lease of lands in Mississippi, made there in February, 1864, between a citizen of Massachusetts and a citizen of Mississippi, was held valid, *Kershaw* v. *Kelsey, 100 Mass. 561* (an elaborate opinion by Gray, J.) ; but see *Shotwell* v. *Ellis, 42 Miss. 439.*

Whether an alien enemy may be an executor, administrator &c., *1 Wms. on Exrs. 229;* *Schouler's Exrs. §§ 32, 109;* *Headman* v. *Rose, 63 Ga. 458;* *Hebert* v. *Jackson, 28 La. Ann. 377;* *Vogel's Case, 20 La. Ann. 81;* *Poindexter's Case, 19 La. Ann. 22;* *Cutter* v. *Howard, 9 Wis. 309;* see *Clement* v. *Sigur, 29 La. Ann. 798;* *Berney* v. *Drexel, 12 Fed. Rep. 393;·* see, further, *14 Am. Law Reg. (N. S.) 129.*—REP.

Smith *v.* Gaines.

is that from the beginning of the war until his death he was a decided and outspoken friend of the Union. Gen. Palmer, of the federal army, who was in command at New Berne, where the testator lived, and who knew him well, testifies that he is as positive as he is about anything that the testator was as loyal as he was. There is no evidence as to whether Mrs. Roberts was of like political sentiments or not. Her husband, who was an officer in the United States navy up to May, 1860, when he resigned, became an officer in the confederate navy and remained in it until the close of the war. Conceding that the State in which Mr. Graham and Mrs. Roberts lived at the time of the death of the former was then alien enemies' territory, and that they are therefore, and without regard to what their political sentiments were, whether favorable or hostile to the Union, to be regarded as alien enemies and subject to all the disabilities of such persons (*Mrs. Alexander's Cotton, 2 Wall. 404*), the devise in question is nevertheless good and passed a title to Mrs. Roberts. The act of congress of July 17th, 1862, " to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," made null and void all sales, transfers and conveyances of any estate and property of persons engaged in armed rebellion against the United States, or aiding or abetting such rebellion, who, after sixty days' warning and proclamation duly given and made by the president, did not cease to aid, countenance and abet such rebellion and return to their allegiance to the United States. The act provided proceedings to condemn such property and apply the proceeds to the support of the army. It has been authoritatively held that the act did not incapacitate a person who voluntarily resided within the confederate lines during the rebellion, from making a last will and testament, further, if at all, than as against the United States, and that a devise by such a person (assuming that it is to be regarded as a sale, transfer or conveyance within the meaning of that act) is good as between private persons and as against every other party except the United States. *Corbett* v. *Nutt, 10 Wall. 464.*

In this case, it appears by the proof that the testator, after

the federal forces took possession of New Berne, which was in March, 1862, took the oath of allegiance in or about January, 1864, and Mrs. Roberts returned to New Berne in October, 1863, and remained there. She took the oath of allegiance there in May, 1864. When the testator died, both he and Mrs. Roberts were living in a city occupied by the federal forces, to which she had returned, voluntarily, in October preceding. There is no ground for staying the proceedings in this case, on account of doubt as to the legal title of the complainants to the undivided half of the remainder.

The defendants also further object that the complainants appear to be owners of the life estate, as trustees under the will of Andrew B. Cobb, and the bill is filed by them in their individual capacity, and they are not parties, as trustees, under that devise. The complainants, however, ask only for partition subject to the life estate.

The defendants still object that the court not only has no power to sell the land in partition without the consent of the owners of the life estate, but has no power to make partition of the remainder without the consent of those owners. The objection is not tenable. The act of 1858 (*Rev. p. 802 § 30*) provides that, where there is an estate for life or lives, or other less estate, and remainder in fee, owned by several persons as coparceners, joint tenants or tenants in common, partition (and sale to that end) may be made, with the consent of the owner or owners of the particular estate. But, by a subsequent act of 1861 (*Rev. p. 802 § 26*), it is provided that, in all proceedings for the partition of lands, where all or any of the undivided shares is or are limited over, after an estate for life, a sale may be made upon an order or decree of this court, when the proceedings have been commenced here, but that no sale shall be ordered unless a division of the lands cannot be made without impairing their value to the extent of at least one-fourth part thereof, and it shall be so reported, or appear to the satisfaction of the chancellor. The act also provides for a sale and conveyance of the title of all the tenants either in possession, remainder, reversion or expectancy. The eighteenth section of the act " relative to the sales of lands

Smith *v.* Gaines.

under a public statute or by virtue of any judicial proceedings," provides for the sale of land in proceedings in partition, freed and discharged of any estate in dower or by the curtesy, provided the tenant of such estate have notice of the application for the sale of the land freed therefrom. It cannot be doubted, therefore, that this court has the power to divide, and to that end, if necessary, to sell the remainder in fee in this case, subject to the life estate.

The defendants also object that, inasmuch as it appears that the complainants hold their title to the half of the remainder by a conveyance to them "as trustees," they cannot maintain this suit without making their *cestuis que trust* parties thereto. But where a trustee has the whole legal estate of a share, he may proceed in partition without making his *cestui que trust* a party. In cases where the existence of the property is not affected, and the only object is to transfer it into the hands of the trustee, the *cestui que trust* is not a necessary party. *Calvert on Parties 212.* A suit in partition is of that character. This suit, then, is properly brought.

From the evidence, I am satisfied that the property in question cannot be divided into two parts without great prejudice to the owners. It is a mineral property, but only partially developed. It seems quite clear that, to be worked to advantage, it should, all of it, be owned by the same party or parties. But further, and more especially, it cannot be told what amount of minerals it contains; that must, necessarily, be left to future explorations and developments. There is, also, obviously, great uncertainty as to the extent of the deposits which have been discovered. Almost all of the value of the property is in its mineral deposits. It is quite clear that no just and equitable partition can be made without a sale, and that a division of the lands cannot be made without impairing their value to the extent of at least one-fourth part thereof.

The defendants also insist that the proceedings in this case should be stayed until after the account has been taken in the pending suit brought by Marquis D. L. Gaines and others against the complainants, as executors and trustees under the will of

Andrew B. Cobb, for waste of the property. The decree in that case was made in April, 1880, and the decree of the court of errors and appeals modifying it, in April, 1881, and it seems the account has not yet been taken. No reason is given, nor does there appear to be any, why this suit should be stayed, to await the account in that one.

There will be a decree in accordance with the views above expressed.